Edward A. Kitchell, Respondent, *v.* The Brooklyn Heights Railroad Co., Appellant.

(City Court of Brooklyn — General Term, November, 1894.)

A verdict against a railroad company will not be set aside as against the weight of evidence, although the number of witnesses on the part of the defendant preponderated, where it appears that several of such witnesses were employees of the defendant, and the testimony is not free from contradictions and discrepancies in important particulars.

In an action by a father for loss of services of a minor daughter and expenses necessarily incurred by reason of personal injuries sustained by her through defendant's negligence, where the injury necessitated the amputation of the child's left thumb and plaintiff was obliged to pay $100 for medical treatment, a verdict for $2,000 is not excessive.

Appeal from judgment in favor of the plaintiff, entered upon a verdict, and from order denying motion for a new trial.

*Morris & Whitehouse,* for appellant.

*Frederick E. Crane,* for respondent.

OSBORNE, J.   This action was brought to recover damages sustained by plaintiff for the loss of services of his daughter, in consequence of injuries sustained by her through the alleged negligence of the defendant, and for medical expenses in the treatment of said injuries.   Plaintiff obtained a verdict for $2,000, and this appeal is from the judgment entered thereon and from the order denying a motion for a new trial.   The learned counsel for the appellant contends that the judgment should be reversed, on the grounds that the verdict was against the weight of evidence, that the plaintiff failed to prove freedom from contributory negligence or negligence of the defendant, and that the verdict was excessive.

It appears, from the case made by the plaintiff, that he resided on the south side of Myrtle avenue, at the corner of Schenck street; that his daughter was a bright, intelligent child, seven years old, accustomed to go on errands to the stores; that on the afternoon of September 17, 1893, plaintiff, in company with his parents, his wife and the child in question, were returning home from Greenpoint, about four or five o'clock, and were passengers on one of defendant's trolley cars running through Myrtle avenue; that plaintiff requested the conductor of the car to stop at Schenck street, but that the car went about fifty feet below Schenck street before stopping; that plaintiff got out of the car first, with his little girl, leaving his wife and parents to follow, alighting from the right-hand side of the car, which was on the northerly track on Myrtle avenue; that in company with his child he went around the rear of the car and proceeded to cross to his residence on the south side of Myrtle avenue, moving in a diagonal direction; that when he had gotten within from eight to twelve inches of the southerly or up track he looked down Myrtle avenue as far as Steuben street, a distance of about 150 feet, and saw no car approaching; just then he heard a scream from his wife, who had made a misstep in coming out of the car, and he left the child and hurried back to the car to see what was the matter; when he got back to the car he found his wife stepping down from the car; at that moment

he heard a shout from the motorman of an up car, " Get out of the way ; " he turned and saw his child in the middle of the up track coming towards him, she having evidently proceeded on her way across the track after her father left her to go back to his wife ; the next instant the up car came along very rapidly, going at the rate of twelve to fifteen miles an hour, struck the child, threw her down and dragged her along, the car going some forty or fifty feet before it stopped ; plaintiff rushed back to the car and seized his child by the skirts, and ran along some twenty feet with the car, endeavoring to keep her from being dragged under the wheels ; when the car stopped it was pushed back a short distance and the child was taken out from under the car somewhat bruised and the left thumb so badly mangled that it had to be amputated. The evidence of the plaintiff was corroborated by his father, who witnessed the accident while on the rear platform of the car awaiting an opportunity to alight.   There was also evidence that, late in the afternoon, the motorman called at the plaintiff's house and there said, " As soon as I saw her on the track I called to her to get off and she turned back."

The evidence on behalf of the defendant flatly contradicted the case made by the plaintiff ; the testimony adduced on its behalf was to the effect that the car was proceeding on the up track very slowly, the motorman ringing his gong while approaching and passing the down car, then at a halt ; that just as the front of the up car was abreast of the rear dashboard of the down car the child darted from behind the down car and ran into the up car, striking it at the front corner of the front step, the effect of which was to throw her down and cause the injuries complained of ; that at that time the motorman had no power on, it being a down grade ; that he applied his brakes as quickly as possible and succeeded in stopping his car in a position that left his front wheels in a line with the rear dashboard of the down car when it came to a standstill ; it further appeared that the front wheels of the car were nine feet eight inches back of the front dashboard.

It will be seen from the foregoing that the testimony of the witnesses on either side was in direct conflict as to how this child came to be hurt, and it was peculiarly within the province of a jury to determine where the truth lay; so also were the questions of contributory negligence of the plaintiff and his child and of the negligence of the defendant. These questions were submitted to the jury in a charge to which no exception was taken, and the learned trial judge also charged the jury that if they believed the contention of the defendant the plaintiff was not entitled to recover.

We have very carefully scrutinized the evidence in this case, and as a result of such scrutiny we cannot say that this verdict should be set aside as against the weight of evidence. While it is true that the number of witnesses on the part of the defendant preponderated, yet it is to be observed that several of them were employees of the defendant, with a natural tendency to favor their employer and to acquit themselves of blame; nor is the testimony free from contradictions and discrepancies in many important particulars. The jurors saw all the witnesses on the witness stand, heard them testify, and are more capable of determining their credibility than we are from a perusal of the printed testimony.

The question of contributory negligence as well as of negligence of the defendant were also questions for the jury to determine, and they were fully instructed as to the principles of law applicable to a case of this character, and we can see no reason for disturbing the verdict on that ground. *Brown* v. *Twenty-third St. R. R.*, 4 N. Y. Supp. 192; 121 N. Y. 667.

Nor are we prepared to say that this verdict should be interfered with on the ground of excessive damages. It appeared that this child had her left thumb amputated, and that the plaintiff incurred a bill of $100 for medical treatment. When we consider the importance of the thumb as a member of the hand, and how necessary its presence is to make the hand available for use in nearly all ordinary vocations, we cannot say that a verdict for $2,000 was so excessive as to indicate

that the jury "acted under some improper bias, influence or prejudice" in awarding that amount.

We are, therefore, of the opinion that the judgment and order denying motion for a new trial should be affirmed, with costs.

CLEMENT, Ch. J., concurs.

Judgment and order affirmed, with costs.